Rollins, J.
This is an action of tort in which the plaintiff seeks to recover for the conversion, on or about June 24,1938, of four bags of heel stock and other similar material. The defendant’s answer was a general denial and a further answer that on the above date it, a common carrier, tendered the above goods to the plaintiff, that the plaintiff refused to pay the cost of carriage of said goods, and that at that time and at all times thereafter the defendant was ready and willing to deliver said goods to the plaintiff upon payment of the lawful charges for transportation of the same which charges the plaintiff has at all times, refused to pay:
The Report recited the facts substantially as follows: The plaintiff is a corporation in Brocton, Massachusetts, engaged in manufacturing lifts. The defendant is a common carrier by motor vehicles, of commodities generally, between said Brocton and Boston, Massachusetts, and has offices in both cities.
*102 After the plaintiff had orally instructed the defendant to the same effect it sent to the defendant at its Brocton office on May 25,1938 the following letter:
“May 25, 1938.
Lyons Express 30 Reed Ave., Brocton, Mass.
Gentlemen:
You are hereby given notice that under no circumstances do we ever want you to cart any merchandise consigned to us.
We have verbally in the past asked that you comply with the above request, but you have ignored same.
Failure of you to comply with this notice in the future will assure you it will result in court action.
Yours very truly,
BEAUTY TOP LIFT CORP. PD/C (sgd) Peter Droukas”
The defendant did not, after receipt of this letter, notify its Boston office not to take any goods consigned to the plaintiff.
Prior to June 21, 1938 the plaintiff ordered the goods in question from Cover & Co., of Philadelphia, Pa., and directed that they be sent by Merchants and Miners Transportation Co., and Steeves Express. The Merchants and Miners Co., did not itself deliver goods in Brockton but did carry them from Philadelphia to Boston. Cover & Co., sent the goods in question by Merchants & Miners Co., as far as Boston and routed them from Boston to Brockton by “Sieves Express”. There was no such company as “Sieves” Express running between Boston and Brockton but there was and is a “Steeves” Express operating between those cities.
The routing on these goods was thereupon changed by the Merchants and Miners from “Sieves” Express to the *103 defendant Express Company. It, (the Merchants and Miners), called the Boston office of the defendant and delivered the goods to one of its drivers for transportation to Brocton. The defendant Company paid the Merchants and Miners Company its charges for carriage of these goods and added thereto its own charges. In both instances the charges were in conformity with the regular published tariffs of the two companies. In due course the driver of the defendant company attempted to deliver the goods to the plaintiff and demanded of it the above transportation charges. The plaintiff did not pay these charges and the goods were taken back to the defendant’s Brocton office. The defendant thereupon wrote the plaintiff on June 21, 1938 offering to deliver the goods upon the payment of the charges. The plaintiff refused to make such payment and brought this action.
Between May 25th, when the plaintiff wrote the defendant to carry no more of its goods, and June 21st, (above mentioned) the defendant transported to the plaintiff four shipments, on three of which charges of transportation were prepaid, and all of such shipments were received and accepted by the plaintiff. Prior to June 1st the treasurer of the plaintiff told Mr. Lyons, the president of the defendant, not to take any more of the plaintiff’s leather, because of unsatisfactory service, and Mr. Lyons said he would do as he pleased.
The defendant seasonably filed eighteen requests for rulings. The trial judge allowed all. of these except four, namely nine to twelve each inclusive, upon which he took no action. These requests are as follows:
1 ‘ 9. The plaintiff in this connection has by its acceptions of the other shipments to it waived the provisions of its letter concerning this matter.
*104 “10. The defendant in this action had a lien upon these goods for his charges and the charges advanced by him to the Merchants & Miners Transportation Company.
“11. A common carrier has a lien for the charges of transportation against the goods transported by him.
“12. This lien is one not only for his own charges of transportation but also for any advance charges of transportation which he has paid to a connecting carrier.”
Since these four requests were not acted upon they were, in effect, denied.
Gennelly v. Perry Inc., 1 Mass. A. D. R. (1936) 109, 111.
The Court found for the plaintiff in the sum of $130.19 and made the following finding:
“I find that the defendant received the goods in question contrary to written instructions given by the plaintiff and that therefore the receiving of the goods by the defendant was wrongful and unauthorized. I find the charges made by the defendant were fair and reasonable. I am unable to find that the circumstances of receiving goods from the defendant by the plaintiff constituted a waiver of the instructions previously given.”
The defendant claiming to be aggrieved by the rulings and refusals to rule, the trial judge reported the case to this Court for determination.
The plaintiff is entitled to recover in this action for conversion if it was entitled to immediate possession of the goods. Winship v. Neale, 10 Gray 382 — Judkins v. Tuller, 277 Mass. 247, 249.
Whether it was so entitled depends upon whether the defendant had a lien upon the goods for the charges of carriage. In the absence of express instructions to the contrary the consignor, and any carrier who receives goods to be carried not only over its own line but over successive lines connected with it, are the agents of the consignee in routing the goods. Briggs v. B. & L. R. R. Co., 6 Allen *105 246. Accordingly, in the absence of such special instructions, the erroneous instructions of the Merchants & Miners Company to route by the non existent “Sieves” Express and its act in routing by the defendant company, were the acts of the agent of the plaintiff and therefore of the plaintiff itself, and the defendant would have had a lien on the g’oods for its charges of transportation.
But there were “special instructions to the contrary”.
It is a settled and universal principle that no man’s property can be lawfully taken from him without his consent, express or implied. Certainly no express consent was given the carrier here, and where there were special instructions to the contrary no consent can be implied.
Robinson v. Baker, 5 Cushing 137 — Briggs v. B. & L. R. R. Company, 6 Allen 246 — Am. & English Ency., vol. 5, pp. 406, 407 — Bird v. Ga. R. R. Company, 72 Ga. 655 — Knight & Providence R., 13 R. I. 572.
The last cited cases are peculiarly similar on their facts with the instant case. Though not controlling on this court the reasoning there used accords with our decision. It is contended, however, by the defendant that the “instructions to the contrary” above discussed, had been waived by the plaintiff’s actions and course of conduct in accepting deliveries of goods from the defendant after the giving of such instructions. The trial judge expressly found that such acts of acceptance did not constitute a waiver of the instructions.
We cannot find as a matter of law that the trial judge erred in this finding. The circumstances of the acceptance of delivery are not before us. The plaintiff is a corporation. It may well have been that the deliveries were all accepted by janitors or subordinate employees whose acts could not bind the corporation and that the directors or responsible officials knew nothing thereof.
There has been no prejudicial error and the Report is dismissed.